STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronnie L. THUMS, Defendant-Appellant.

Court of Appeals

*No. 2005AP2682–CR. Submitted on briefs May 15, 2006.
—Decided July 19, 2006.*

2006 WI App 173

(Also reported in 721 N.W.2d 729.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul G. LaZotte*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. The circuit court sentenced Ronnie L. Thums for stalking with a dangerous weapon in accordance with the penalty scheme in place under TIS-I, Wisconsin's original "truth in sentencing" statutes. Thums claims the court should instead have imposed the penalties in effect after the second wave of TIS statutes became effective because the one instance in which he used a weapon occurred after that time. We agree. Because he had not committed all the elements of his crime until after TIS-II went into effect, the State

could not have charged Thums with this offense during TIS-I. We cannot allow the government to benefit from a sentencing scheme that was obsolete before Thums' offense became chargeable. We remand to the circuit court for resentencing pursuant to the proper penalty scheme.

¶ 2. The parties do not dispute the essential facts. Thums stalked his former girlfriend during a period between August 1, 2002, and May 13, 2004. During that time, on February 20, 2004, Thums showed up at the victim's workplace, and her boss escorted him out of the building. When she got into her vehicle a short time later, she felt something sharp and noticed a blade—pointed toward her—protruding from the seat and between her legs. When the victim removed the knife, it turned out to be an eleven-inch blade with a missing handle. She went back inside, and her coworkers called the police.

¶ 3. The police responded to the call and attempted to locate Thums. They eventually did find him, but when they attempted a traffic stop, Thums drove away and led the officers on a high-speed chase, striking two squad cars in the process. The police did not successfully apprehend Thums that night but did arrest him in his hotel room shortly thereafter.

¶ 4. The State charged Thums with six offenses, all as a repeater. These offenses were disorderly conduct, resisting an officer, attempting to flee or elude a traffic officer, two counts of reckless endangerment, and hit and run of an attended vehicle. While Thums was out on bail for these offenses, he committed his final act of stalking. The State then charged Thums with two additional crimes, again as a repeater: stalking with a dangerous weapon and felony bail-jumping. The two cases were subsequently consolidated.

¶ 5. Thums entered pleas of no contest to the stalking and eluding charges and to one charge of reckless endangerment. All other charges were dismissed and read in. The State also dismissed all of the repeater counts. The court imposed a fifteen-year sentence on the stalking charge, with seven years of initial confinement and eight years of extended supervision. It imposed concurrent sentences on the other charges.

¶ 6. Thums moved for postconviction relief, objecting that the court had sentenced him in accordance with the sentencing scheme in place during TIS-I. While TIS-I was in effect, stalking with a dangerous weapon constituted a Class C felony, *see* Wis. Stat. § 940.32(2) and (3)(c) (2001–02)[1], for which the maximum term of imprisonment was fifteen years, *see* Wis. Stat. § 939.50(3)(c) (2001–02). Thums observed that TIS-II had reduced the applicable penalties. The current § 940.32(2) and (3)(c) make stalking with a dangerous weapon a Class F felony. For Class F felonies, the court can impose a maximum sentence of 12.5 years of imprisonment. Wis. Stat. § 939.50(3)(f). Any term of extended supervision may not exceed five years. Wis. Stat. § 973.01(1)(d)4. According to Thums, the court had to resentence him because his total sentence went over the 12.5–year maximum, and his eight-year term of extended supervision was three years over the limit for extended supervision.

¶ 7. The circuit court recognized that the issue before us, namely, which penalty scheme to apply when a course of conduct constituting a crime commences

[1] Refer to statutory language in effect prior to February 1, 2003, the effective date for 2001 Wis. Act 109 penalty provisions. *See* 2001 Wis. Act. 109, § 9459(1). All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

prior to the date of a penalty change but concludes after that date, was an issue of first impression. It held that TIS-I applied because "[Thums'] notice as to what penalty he was facing [for his behavior] including . . . the dangerous conduct occurred prior to the commencement of his activity and that was [TIS-I] . . . . [He] had notice at the time when he began his course of conduct." Accordingly, the court denied Thums' motion for post-conviction relief. Thums appeals.

¶ 8. The State adheres to the position it advanced in circuit court. Specifically, it opines that when a continuing offense "straddles" the effective date of a penalty change for that offense, the sentencing court should apply the penalty scheme in place when the course of conduct began. We need not evaluate that proposition as a general rule. Instead, we examine that proposition only in light of the particular fact scenario presented in this case. Here, the offense was stalking with a dangerous weapon. Use of a weapon, therefore, was an element of the crime. We need only address the situation in which the penalty change occurs before all elements of the offense are present.[2]

¶ 9. Our legislature prescribes the penalties applicable for violations of the law. *See, e.g.,* Wis. Stat. §§ 939.50(3) and 973.01. We therefore look to the Wisconsin Statutes to resolve the issue at hand. This endeavor requires us to construe statutes and apply

---

[2] Certainly, Thums' conduct met all the elements for stalking while TIS-I remained in effect. Whether the court could have applied TIS-I penalties to the ongoing course of Thums' conduct constituting that offense, which "straddled" the effective dates of TIS-I and TIS-II, would present a closer question that we need not resolve at this time; the State did not charge Thums with simple stalking.

them to a factual situation. Both tasks involve questions of law that we review without deference to the circuit court. *State ex rel. Unnamed Person No. 1 v. State*, 2003 WI 30, ¶ 28, 260 Wis. 2d 653, 660 N.W.2d 260. We aim to discern the legislature's intent when we interpret a statute. *State v. Schwebke*, 2002 WI 55, ¶ 26, 253 Wis. 2d 1, 644 N.W.2d 666 (statutory construction). We begin with the language of the statute, *id.*, and unless the language gives rise to an ambiguity, we will end the inquiry there. *Unnamed Person No. 1*, 260 Wis. 2d 653, ¶ 28.

¶ 10. WISCONSIN STAT. ch. 990 contains rules for statutory construction. The State appropriately points us toward WIS. STAT. § 990.04. That statute reads, in relevant part:

> **990.04 Actions pending not defeated by repeal of statute.** The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed [or] penalties . . . incurred . . . under such statute before the repeal thereof, whether or not in course of prosecution . . . at the time of such repeal; but all such offenses [or] penalties . . . created by or founded on such statute, liability wherefore shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted . . . .

By its terms, § 990.04 only preserves liability for "offenses *committed*" and "penalties . . . *incurred*" prior to the repeal. (Emphases added.) We deem significant the drafters' use of the past tense. In our view, the statute provides that although the State need not have commenced a prosecution at the time of the repeal, *see also Truesdale v. State*, 60 Wis. 2d 481, 483, 489, 210 N.W.2d

726 (1973) (repeal occurred after offense and prior to arraignment), it is necessary that by the time of the repeal, the offender has committed the offense and thereby become subject to the penalty for the offense. A defendant has not committed an offense unless all the elements of that crime have been met. *Cf. State v. Tomlinson*, 2002 WI 91, ¶ 55, 254 Wis. 2d 502, 648 N.W.2d 367 (proof of all elements of the crime a prerequisite to conviction). Thus, he or she incurs no penalties until that time.

■

¶ 11. Thums had not committed the crime of stalking with a dangerous weapon during TIS-I. He therefore did not become subject to the TIS-I penalties during TIS-I. If the State could not have applied TIS-I to Thums' offense while TIS-I remained effective, *a fortiori* it should not have the benefit of that sentencing scheme after those penalties have been rendered obsolete by a new sentencing scheme. We do not share the State's view that application of TIS-II penalties creates an exception to the Wis. Stat. § 990.04 rule against retroactive application of penalties because the express terms of § 990.04 do not preserve the TIS-I sentencing scheme in a scenario like that presented here. Indeed, because Thums' conduct did not meet the elements of stalking with a dangerous weapon on the effective date of TIS-II, his liability for that crime was prospective on that date, not retrospective. Thus, application of TIS-II would also not offend the general rule that statutes presumptively have only prospective effect. *See Betthauser v. Medical Protective Co.*, 172 Wis. 2d 141, 147, 493 N.W.2d 40 (1992).

¶ 12. The State also argues the circuit court's notice rationale. According to the State,

a defendant who begins committing a continuing offense knows at the time he decides to engage in such conduct what his maximum exposure is . . . .

So, when Thums decided to engage in the offense of stalking in August of 2002, he was charged with the knowledge that he faced a 15–year maximum penalty if he (a) committed a series of acts that satisfied the constituent elements of stalking under [Wis. Stat.] § 940.32(2), and he (b) used a dangerous weapon at any time during that course of conduct no matter how long it lasted. (Citations omitted.)

We agree that Thums had such notice. However, the fact that a defendant has notice of an obsolete penalty scheme does not mean the courts may apply penalties that the legislature no longer prescribes.[3]

¶ 13. Finally, we reject the State's alternative argument that we should leave the penalty to the prosecutor's discretion. Again, penalties are prescribed by the legislature. Prosecutorial discretion only allows the State to choose among available penalty schemes. The legislature took the relevant TIS-I penalties off the table by specifically repealing them during TIS-II. *See* 2001 Wis. Act 109, § 9459(1). The State acknowledges that "the prosecutor could have made things far worse for Thums by choosing to charge one count of stalking for his conduct between August 2002 and January 31, 2003, and a separate count of stalking with the use of a dangerous weapon for his conduct after February 1,

---

[3] Moreover, Thums' notice necessarily includes notice of the change in penalty. Such a change could reasonably affect a defendant's expectations about what sentence the court might apply to him or her, which in turn might affect that individual's conduct. Theoretically, if a defendant has notice that a harsher penalty remains in effect, he or she may well decide not to complete the offense.

2003." The State must bear the consequences of its discretionary choice not to do so.

¶ 14. Both parties agree that if the sentence the circuit court imposed was improper, Thums is entitled to be resentenced as to both components of the bifurcated sentence. We have held that the court did err when it applied TIS-I statutes during sentencing because those penalties were obsolete before Thums' conduct became chargeable as stalking with a dangerous weapon. Accordingly, we remand to the circuit court for resentencing in accordance with the proper penalty scheme. The court may also revisit whether the companion charges should be concurrent or consecutive as the court sees fit.

*By the Court.*—Judgments and order reversed and cause remanded with directions.